NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 4, 2015[*]
Decided December 7, 2015

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-1708

| | |
|---|---|
| STACY K. PERKINS<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:13-cv-01428-TWP-DML<br><br>Tanya Walton Pratt,<br>*Judge*. |

**O R D E R**

Stacy Perkins, a 55-year-old who claims that he is disabled due to back pain, shoulder pain, depression, and anxiety appeals the district court's judgment upholding the Social Security Administration's denial of his application for Disability Insurance Benefits and Supplemental Security Income. An administrative law judge denied

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

benefits because she found that suitable jobs exist for Perkins given his residual functional capacity. On appeal Perkins challenges the ALJ's decision on two grounds, but both are waived because they were not raised in the district court. We thus affirm the judgment.

Perkins injured his back on the job in 2006 while working for Chrysler Corporation in California. He was diagnosed with lower back strain and treated with pain medication, physical therapy, and steroid injections. In May 2007, after returning to work, Perkins complained of worsening symptoms with the pain radiating into his legs. X-rays were unremarkable, and an MRI revealed disc protrusion and mild narrowing of the spinal canal but no evidence of nerve root displacement. Perkins stopped working in July 2007 and moved to Indiana two months later. In October 2007, in connection with an ongoing claim in California for workers' compensation, an orthopedist completed a functional capacity evaluation, which led to restrictions on lifting, bending, and twisting. The following month the orthopedist recommended pain management and possibly retraining for a job less physically demanding than the warehouse work that Perkins had been doing for Chrysler. The results of a physical evaluation in April 2008 were normal, except for a decreased range of motion and tenderness in the paralumbar region. Perkins was discharged from treatment in September 2008, apparently for "lack of compliance."

Perkins applied for benefits in December 2008. A consultative examination in February 2009 indicated reduced mobility in his lower back and his right shoulder but otherwise yielded normal results. That same month two state-agency physicians evaluated the medical record and concluded that Perkins had the residual functional capacity to perform light work. In March 2009 the Social Security Administration issued its initial decision denying benefits, and then in mid-May the agency denied reconsideration.

In late May 2009 Perkins saw a family physician, Dr. Charles Platz. The results of a physical examination during that visit were normal except for stiffness and tenderness in Perkins's lower back. At the time Perkins was not taking any medications, and he told Dr. Platz that he was not anxious or depressed. A year later, though, when Perkins next saw Dr. Platz in April and May 2010, he complained of depression and worsening back pain. A physical examination was normal, however, other than disclosing tenderness in the lower back.

Perkins returned to Dr. Platz in November 2010 with similar complaints. In early March 2011, about a week before the first of two hearings before the ALJ, Dr. Platz

completed written assessments of Perkins's physical and mental residual functional capacity and asserted that he was limited to a greater extent than previously reported. The doctor opined that Perkins could sit, stand, or walk only for a maximum of one hour each during a work day; that he could not lift or carry any weight; and that pain and fatigue severely impaired his ability to perform nonexertional functions.

At the end of March 2011, the ALJ issued a decision denying benefits. When Perkins sought review of that decision, however, the Appeals Council discovered that the audio recording of the hearing was partially inaudible and thus remanded for a new hearing, which was conducted in March 2012.

Meanwhile, Perkins had refiled his application for disability benefits (the reason is not disclosed in the record, but the new application was simply merged with the existing application). A state-agency psychologist examined Perkins in August 2011 and opined that, during a typical 8-hour workday, he could remember and follow simple instructions and engage in appropriate social behavior. The psychologist further opined that Perkins's functional limitations were at most mild. That same month Perkins also was examined by a state-agency physician. He observed that Perkins's posture and gait were normal and that he showed normal strength in all major muscle groups except for a minimal deficit in his right arm. The physician added, though, that during the examination Perkins could not walk, squat, or stand on his heels or toes without difficulty, and that his range of motion was limited in the lower back, right shoulder, and hips. In September 2011 Perkins returned for another physical consultative evaluation. This time Perkins said that he was in too much pain to participate fully in the examination, and the physician noted tenderness in the lower back. Still, the physician concluded that Perkins showed normal grip strength, and fine-finger skills. Dr. Platz provided another assessment of Perkins's residual functional capacity in January 2012; his opinion about Perkins's limitations remained unchanged from his March 2011 assessment.

Perkins testified at both hearings. He explained that he had last worked in July 2007. As a result of his 2006 workplace injury, he said, he had received short-term disability payments and a "buyout" from Chrysler, as well as an award from the Workers' Compensation Appeals Board in California. He testified that he had tried but failed at do vocational rehabilitation because he could not comprehend the material. Perkins recounted experiencing pain in his lower back that radiates to his legs and limits his ability to sit, stand, bend, and lift. He takes medication for his back pain and depression, Perkins continued, but that medication, although helpful, knocks him out

and then wears off. He added that he cries some nights because of depression and that he has difficulty concentrating on reading material. At both hearings, a vocational expert testified that a person of Perkins's age, education, and work experience with a residual functional capacity limiting him to a reduced range of light work could not perform Perkins's past jobs but could perform other jobs including inspector, assembler, and production planning clerk.

On April 9, 2012, after the second hearing, the ALJ denied benefits using the five-step framework. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ found that Perkins was not employed (Step 1); he suffered from depression and degenerative disc disease of the lumbar spine, both severe (Step 2); his impairments did not meet or equal the severity of an impairment listed in the Social Security regulations (Step 3); he was not capable of performing his past work (Step 4); and suitable jobs were available in the national economy (Step 5). In reaching her conclusions at Steps 4 and 5, the ALJ concluded that Perkins had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that he is limited to unskilled, sedentary work involving simple, routine, repetitive, concrete, and tangible tasks; only occasional use of foot controls or occasional climbing of ramps and stairs; and no climbing of ladders, ropes, or scaffolds. These restrictions are not as limiting as those recommended by Dr. Platz. In July 2013 the Appeals Council declined to review that determination, making the ALJ's ruling the final decision of the Commissioner. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014).

In September 2013, Perkins brought an action in the district court for judicial review of the ALJ's adverse decision. *See* 42 U.S.C. § 405(g). At some point after the ALJ had denied benefits, Perkins filed a new application for disability alleging the same onset date as before. There is scant information in the record relating to this new application. What is known, though, is that the Social Security Administration, after reviewing the new application, notified Perkins in January 2014 that he met the medical requirements for disability benefits as of April 10, 2012, one day after the ALJ had issued the adverse decision now under review. Armed with this new, favorable ruling, Perkins argued in the district court that the ALJ necessarily had erred because, according to Perkins, the medical evidence was the same in both administrative matters. In its March 2015 decision, however, the district court rejected that contention, relying on the agency's correspondence notifying Perkins of its decision on his new application. That document (a copy of which Perkins had submitted to the district court) explains that the favorable decision rests on specific medical records received by the agency in 2013, after

the unfavorable 2012 decision. The district court also concluded that the ALJ's decision was supported by substantial evidence.

On appeal, Perkins no longer argues that the ALJ erred due to the perceived inconsistency between the agency's January 2014 decision and the ALJ's denial of benefits in April 2012. Instead, in this court he presents claims that were not brought in the district court and thus are waived. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013); *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Ehrhart v. Secretary of Health and Human Serv.*, 969 F.2d 534, 537 n.4 (7th Cir. 1992). In any event, we would reject these new contentions even if they had not been waived.

Perkins would argue that the ALJ failed to consider the workers' compensation decision from California. That decision, Perkins says, establishes that he was permanently disabled by his workplace injury in 2006 and thus entitled to Social Security benefits. Yet the California decision, which was part of the evidence before the ALJ, does not find that Perkins is unable to engage in any substantial gainful activity, which is the standard for disability under the Social Security Act. *See* 42 U.S.C. § 423(d); *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011); *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). Rather, the California decision declares Perkins to have a permanent disability of 32%. Permanent disability under the California labor code involves an impairment of earning capacity, impairment of the normal use of a limb, or a competitive handicap in the open labor market, but the worker can receive benefits whether or not employed, including when employed at the very job held prior to the injury. *See Brodie v. Workers' Comp. Appeals Bd.*, 156 P.3d 1100, 1104 (Cal. 2007); *Scalice v. Performance Cleaning Sys.*, 57 Cal. Rptr. 2d 711, 717 (Cal. Ct. App. 1996); *Universal City Studios, Inc. v. Workers' Comp. Appeals Bd.*, 160 Cal. Rptr. 597, 606–07 (Cal. Ct. App. 1979). Even if the ALJ should have explicitly discussed the California decision, that decision was not binding on the ALJ because it is not based on Social Security law. *See* 20 C.F.R. § 416.904; *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006); *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

In addition, Perkins would argue that his depression and anxiety compelled a finding of disability because he was assessed a score of 60 on the Global Assessment of Functioning metric during his mental status examination in August 2011. Once again Perkins is incorrect.

A single GAF score at a particular point in time, in particular a score that signals psychological symptoms that are somewhere between mild and moderate, is not conclusive of a disability. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). GAF scores are not static and depend on how the patient feels the day he is examined. *Voigt v. Colvin*, 781 F.3d 871, 875 (7th Cir. 2015). The GAF scale is used in making treatment decisions and does not reflect the clinician's opinion of functional capacity, *see Denton*, 596 F.3d at 425, and in fact the psychologist who assessed the score of 60 also concluded that Perkins could work. There is no requirement that an ALJ determine the extent of an individual's disability based entirely on a GAF score. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

Accordingly, the judgment is AFFIRMED.