[No. H036724. Sixth Dist. Nov. 10, 2011.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and JAMES
DORSETT, Respondents.

444

**COUNSEL**

Charles S. Bentley, Patricia A. Brown and David M. Goi for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Butts & Johnson, Karina Johnson and Arthur Johnson for Respondent James Dorsett.

**OPINION**

**BAMATTRE-MANOUKIAN, J.**—Respondent James Dorsett sustained a specific injury to his cervical spine on March 21, 2000, while working for South Valley Glass, Inc. (South Valley Glass), and a cumulative trauma injury to his cervical spine between November 15, 2002, and June 8, 2004, while working for A-Tek Glass, Inc. (A-Tek). Both employers were insured for purposes of workers' compensation by petitioner State Compensation Insurance Fund (SCIF). Dorsett filed separate applications to obtain workers' compensation for his injuries. The workers' compensation judge (WCJ) determined, based in part on the opinion of an agreed medical evaluator (AME), that Dorsett sustained an "overall combined permanent disability [of] 100 percent," that "there is only one injury," and that "there can be no apportionment under *Benson.*"[1] SCIF filed separate petitions for reconsideration on behalf of South Valley Glass and A-Tek. The Workers' Compensation Appeals Board (the Board) denied reconsideration.

In its timely petition for writ of review filed in this court, SCIF contends that the Board erred "when—despite the clear statutory command of Labor Code § 4663 and § 4664, and the decision in *Benson* . . . , which interpreted

---

[1] *Benson v. Workers' Comp. Appeals Bd.* (2009) 170 Cal.App.4th 1535 [89 Cal.Rptr.3d 166] (*Benson*).

the statutes—it determined that apportionment of permanent disability did not apply."[2] As we find that the WCJ must make an apportionment determination in this case, we will annul the Board's order and remand the matter for further proceedings.

## BACKGROUND

On March 20, 2000, Dorsett sustained a specific injury to his cervical spine while working as a glazer for South Valley Glass. He underwent two cervical spine surgeries, including a discectomy and fusion, and returned to work as a glazer with a weight lifting restriction. From November 15, 2002, through June 8, 2004, he sustained a cumulative trauma injury to his cervical spine while working as a glazer for A-Tek. Both employers were insured for purposes of workers' compensation by SCIF. Dorsett filed separate applications for workers' compensation benefits for his injuries. (ADJ584277 (STK 0187511), ADJ4288246 (SJO 0254750).)

In a report dated June 5, 2009, Dr. Joseph Izzo, a neurosurgeon and the AME in the cumulative injury case, stated: "There is no question in my mind that had [Dorsett] not had the injury in March of 2000 and had he not had the subsequent surgery that was indicated as a result of that injury and had he not had the unfortunate result of the surgery with subsequent ongoing neck symptoms, the cumulative trauma activities would not be an issue. [¶] The reason for that is that there is absolutely no indication that any of the degenerative changes that were present in his neck . . . were at all symptomatic. [¶] Furthermore, there is no indication on reviewing all the medical records in this case that they would have ever been symptomatic. [¶] The simple fact of the matter is that had the March 2000 injury not occurred, the cumulative trauma injury would not have occurred. In fact, from that point of view, one can very well view this injury (CT injury to June of 2004) as a compensable consequence of the specific injury. [¶] Again this is not my opinion simply based on supposition, but based on the absence of any medical records that would indicate that any of the activities he did subsequent to the March 2000 incident would have led to any symptoms whatsoever."

During his deposition on August 26, 2009, Dr. Izzo stated: "I've only tried to present today and in these reports my approach from a medical point of view in terms of how one consequence of cumulative trauma interrelates to the prior consequence of specific injury. And I'm fully aware—and it makes sense to me as a nonlegal person—that two injuries are two injuries, as you said [counsel]. See, you have a specific and you have a cumulative. There's

---

[2] All further statutory references are to the Labor Code.

no question about that. . . . The only disagreement . . . is the interrelationship between the two. And my basis for my opinion, it's based on what I see to be an anatomy or accurately the change in anatomy created by the initial injury and subsequent surgery. [¶] I mean if you look at causation of disability as it [is] now looked at following especially *Escobedo*,[3] . . . the cause of the eventual final disability is going to be the initial injury of 2000, the surgery and the outcome of the surgery with the changes it occurred [*sic*], and the subsequent cumulative trauma injury. If the initial one doesn't happen, as I've already said, the second one can't happen because there's no indication medically that he would have had any disability in 2004 absent the first injury of 2000."

In the same deposition, counsel for SCIF asked Dr. Izzo whether he was saying that Dorsett's "current level of permanent disability—whatever that level may be—is apportioned 50 percent to the specific injury and 50 percent to the cumulative trauma injury." Dr. Izzo answered, "That's correct." "What I'm simply saying is that, because of the first injury occurred and the fusion had happened—and, again, I'm repeating myself—exposure to the same type of activities subsequent to that injury led to the eventual permanent partial disability. And without the first injury, it is medically probable that that would not have happened simply because, if he had not had alteration in his anatomy, there's no medical evidence to indicate that he couldn't have continued to go on and do the usual and customary work as a glazer."

Following a two-day hearing, the two cases were submitted for decision principally on the issues of permanent disability and apportionment between the two injuries. The WCJ filed a joint findings, award, and order on December 16, 2010. He found that Dorsett was permanent and stationary as of September 20, 2007, that "[t]he injuries resulted in permanent disability of 100 [percent] combined, and [that] the permanent disability caused by each is not reasonably capable of separation or apportionment from the combined permanent disability." In his opinion on decision, the WCJ stated that he found Dorsett's "overall combined permanent disability is 100 percent" "primarily rel[ying] upon . . . Dr. Izzo's opinion that based on physical disabilities alone, [Dorsett] is totally disabled." The WCJ further stated: "As to apportionment between the two injuries, Dr. Izzo indicates that the 11/15/02 through 6/8/04 cumulative injury is a compensable consequence of the 3/21/00 injury at South Valley Glass. Though Dr. Izzo also indicates that he would apportion permanent disability equally between the two injuries, since he indicated that the cumulative injury is a compensable consequence of the first specific injury, in essence there is only one injury, with the specific and subsequent cumulative trauma injury being inextricably intertwined to the extent that there can be no apportionment under *Benson*. The award of

---

[3] *Escobedo v. Marshalls* (2005) 70 Cal.Comp.Cases 604 (en banc).

permanent disability is therefore made joint and several against both the 3/21/00 and 11/15/02 through 6/8/04 dates of injury."

SCIF filed separate petitions for reconsideration on behalf of South Valley Glass and A-Tek. On behalf of South Valley Glass, SCIF contended that "[t]he WCJ should have awarded permanent disability based on apportionment between the two injuries because finding both employers jointly and severally liable was based on an incorrect application of the 'compensable consequence' theory."

On behalf of A-Tek, SCIF contended that "[a] cumulative trauma injury cannot be both a compensable consequence of an earlier injury and a second injury as well. An injury cannot be a compensable consequence of a prior injury to the same body [part]. If the cumulative trauma is a compensable consequence of the 2000 injury, issuing a joint award is error. [¶] [The] WCJ . . . erred in finding that the specific and cumulative trauma injury are inextricably intertwined to the extent that there cannot be apportionment."

In his report and recommendation on the petitions, the WCJ stated that *Benson* did not apply in this case because "*Benson* dealt with two successive injuries that were admittedly separate and distinct," and "[t]he AME in *Benson* (also Dr. Izzo) did not indicate there that one was a compensable consequence of the other." "Though there is discussion in his deposition . . . of his opinion that each injury contributed equally to the disability . . . Dr. Izzo did indicate that it did not negate the concept of the two being 'inextricably intertwined.' . . . He also confirmed on further questioning . . . that he considered the CT a compensable consequence of the specific as 'an injury that is a direct and natural occurrence of an earlier injury that would not have occurred absent the earlier injury.' " "As the two injury claims are inseparable as one being a compensable consequence of the other it is appropriate to make the award jointly against both SCIF defendants." The WCJ recommended that both petitions for reconsideration be denied.

The Board denied reconsideration, adopting and incorporating the WCJ's report.

## DISCUSSION

In this court, SCIF contends that the Board erred when "it determined apportionment of permanent disability did not apply" in this case. SCIF argues that, because Dr. Izzo clearly found two injuries, and he was able to apportion the permanent disability between the two injuries, the WCJ erred under sections 4663 and 4664 in making a joint and several 100 percent permanent disability award against the two employers.

Dorsett contends that SCIF's argument "does not consider the exception outlined in *Benson* . . . and failed to consider that the AME found one injury to be a compensable consequence of the other, and thus the injuries are not in fact 'separate' or 'distinct.'" Dorsett argues that one injury can be a compensable consequence of another injury, and that the employers failed in their burden of proof on the issue of apportionment.

Section 4663 provides, in pertinent part, that "(a) Apportionment of permanent disability shall be based on causation. [¶] (b) Any physician who prepares a report addressing the issue of permanent disability due to a claimed industrial injury shall in that report address the issue of causation of the permanent disability. [¶] (c) . . . [T]he report must include an apportionment determination. A physician shall make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries. If the physician is unable to include an apportionment determination in his or her report, the physician shall state the specific reasons why the physician could not make a determination of the effect of that prior condition on the permanent disability arising from the injury. . . . [¶] (d) An employee who claims an industrial injury shall, upon request, disclose all previous permanent disabilities or physical impairments."

Section 4664 provides, in pertinent part, that "(a) The employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment. [¶] (b) If the applicant has received a prior award of permanent disability, it shall be conclusively presumed that the prior permanent disability exists at the time of any subsequent industrial injury. . . . [¶] (c) (1) The accumulation of all permanent disability awards issued with respect to any one region of the body in favor of one individual employee shall not exceed 100 percent over the employee's lifetime . . . . [¶] . . . [¶] (2) Nothing in this section shall be construed to permit the permanent disability rating for each individual injury sustained by an employee arising from the same industrial accident, when added together, from exceeding 100 percent."

■ "Employers must compensate injured workers only for that portion of their permanent disability attributable to a current industrial injury, not for that portion attributable to previous injuries or to nonindustrial factors. 'Apportionment is the process employed by the Board to segregate the residuals of an industrial injury from those attributable to other industrial injuries, or to nonindustrial factors, in order to fairly allocate the legal responsibility.' [Citation.]" (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1321 [57 Cal.Rptr.3d 644, 156 P.3d 1100] (*Brodie*).)

Sections 4663 and 4664 were enacted as part of Senate Bill No. 899 (2003–2004 Reg. Sess.) (Senate Bill 899), an omnibus bill to restructure California's workers' compensation system. Before the enactment of Senate Bill 899, the general rule was that "apportionment was 'concerned with the disability, not its cause or pathology.' [Citation.]" (*Marsh v. Workers' Comp. Appeals Bd.* (2005) 130 Cal.App.4th 906, 912 [30 Cal.Rptr.3d 598] (*Marsh*); see also *Benson, supra*, 170 Cal.App.4th at pp. 1545, 1557.) "Apportionment based on causation was prohibited. [Citation.]" (*Brodie, supra*, 40 Cal.4th at p. 1326.) "This rule left employers liable for any portion of a disability that would not have occurred but for the current industrial cause . . . ." (*Ibid.*) "[I]n case after case courts properly rejected apportionment of a single disability with multiple causes. [Citations.]" (*Ibid.*) And employees were granted "wide latitude to disprove apportionment based on prior permanent disability awards by demonstrating that they had substantially rehabilitated the injury. [Citation.]" (*Id.* at pp. 1326–1327.)

"The plain language of new sections 4663 and 4664 demonstrates they were intended to reverse these features" of the former workers' compensation system. (*Brodie, supra*, 40 Cal.4th at p. 1327.) Apportionment is now "based on causation." (§ 4663, subd. (a).) Under Senate Bill 899, "the new approach to apportionment is to look at the current disability and parcel out its causative sources—nonindustrial, prior industrial, current industrial—and decide the amount directly caused by the current industrial source. This approach requires thorough consideration of past injuries, not disregard of them." (*Brodie, supra*, 40 Cal.4th at p. 1328.) The "clear intent" of the Legislature in enacting Senate Bill 899 was "to charge employers only with that percentage of permanent disability directly caused by the current industrial injury." (*Brodie, supra*, 40 Cal.4th at p. 1332; see also *Marsh, supra*, 130 Cal.App.4th at p. 912.) Therefore, evaluating physicians, the WCJ, and the Board must "make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries." (§ 4663, subd. (c); see also *Benson, supra*, 170 Cal.App.4th at p. 1550, fn. 13.)

█ In *Wilkinson v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491 [138 Cal.Rptr. 696, 564 P.2d 848], our Supreme Court held that "whenever a worker . . . sustains successive injuries to the same part of his body and these injuries become permanent at the same time, the worker is entitled to an award based on the combined disability." (*Id.* at p. 494.) The *Wilkinson* court concluded that when two separate work-related injuries become permanent at the same time, neither permanent disability is previous to the other and the employee therefore is entitled to a single permanent disability rating. (*Id.* at

p. 497.) However, the Court of Appeal in *Benson* concluded that "[t]he clear change in the statutory language" of sections 4663 and 4664 as a result of Senate Bill 899 indicates a legislative intent "to invalidate *Wilkinson.*" (*Benson, supra*, 170 Cal.App.4th at p. 1550.) Now, "the plain language of section 4663, subdivision (c), read in conjunction with the statutory scheme as a whole, 'specifically requires a physician to determine what percentage of disability *was caused by each industrial injury*, regardless of whether any particular industrial injury occurred before or after any other particular industrial injury or injuries.' " (*Benson, supra*, at p. 1552.)

"[T]here may be limited circumstances, not present here, when the evaluating physician cannot parcel out, with reasonable medical probability, the approximate percentages to which each distinct industrial injury causally contributed to the employee's overall permanent disability. In such limited circumstances, when the employer has failed to meet its burden of proof, a combined award of permanent disability may still be justified. (See § 4663, subd. (c); *Kopping v. Workers' Comp. Appeals Bd.*[ (2006)] 142 Cal.App.4th [1099,] 1115 [48 Cal.Rptr.3d 618] ['the burden of proving apportionment falls on the employer because it is the employer that benefits from apportionment'].)" (*Benson, supra*, 170 Cal.App.4th at p. 1560; see also *id.* at p. 1541, fn. 3.)

In *Benson*, an employee sustained a specific industrial injury to her neck on June 3, 2003. She eventually underwent surgical fusion of the cervical spine. In September 2005, Dr. Izzo, acting as an AME, concluded that the employee had actually sustained two separate injuries to her neck, the specific injury and a cumulative trauma injury through June 3, 2003, and that both injuries became permanent and stationary on the same date. Dr. Izzo apportioned half of the employee's permanent disability to the cumulative trauma injury and half to the specific injury. (*Benson, supra*, 170 Cal.App.4th at p. 1540.) The employee filed two separate claims for her injuries and it was undisputed that the employee's combined permanent disability rating as a result of her injuries was 62 percent. The WCJ issued the employee a single permanent disability award based on the combined permanent disability rating, rather than two separate awards of 31 percent permanent disability. (*Id.* at p. 1541.) The board granted the employer's petition for reconsideration, and concluded, en banc, that " '[b]ased upon the AME's determination that each of [the employee's] two injuries was equally responsible for her current level of permanent disability, she is entitled to receive a separate award of 31% permanent disability for each injury.' " (*Ibid.*) The employee filed a petition for writ of review.

The appellate court held that "the plain language of sections 4663 and 4664 compels apportionment here." (*Benson, supra*, 170 Cal.App.4th at

p. 1549.) "The Legislature's focus, in section 4663, subdivision (c), on apportionment to other causative factors, 'including prior industrial injuries,' rather than prior permanent disabilities, must be accorded significance." (*Id.* at p. 1550, fn. omitted.) When an injured employee has a prior industrial injury, but never received an award of permanent disability resulting from that injury, a physician could still determine, as a matter of fact, that the injured worker's present level of permanent disability was partially caused by the previous industrial injury. (*Id.* at pp. 1550–1551, fn. 14; see also *Kopping v. Workers' Comp. Appeals Bd., supra*, 142 Cal.App.4th at p. 1112.) When that occurs, the " 'merging of separate injuries into a single award of disability, is contrary to the reforms set in place by SB 899, which mandate that an employer cannot be held liable for any disability other than that directly caused the by the industrial injury.' " (*Benson, supra*, at p. 1552.) Accordingly, the appellate court concluded that "[t]he Board properly made two awards of 31 percent permanent disability each, based on Dr. Izzo's opinion that [the employee's] permanent partial disability was equally caused by 'cumulative trauma *through* June 3, 2003,' and 'the specific injury of June 3, 2003.' " (*Id.* at p. 1560.)

■ The WCJ and the Board in the case before us found that there could be no apportionment pursuant to *Benson* because here, unlike in *Benson*, the evaluating physician found that the second industrial injury was a compensable consequence of the first industrial injury. We disagree with the Board's finding. Section 5302 states that decisions and awards of the Board shall be presumed to be reasonable and lawful. ■ However, pursuant to Senate Bill 899, *Brodie*, and *Benson*, successive injuries to the same body part that become permanent and stationary at the same time can no longer be rated as a single injury. Rather, successive injuries must be rated separately, except when physicians cannot parcel out the causation of disability. Absent an ambiguity in the statutory scheme, we may not rely on section 5302's directive to extend the benefits awarded to the injured worker here. (*Brodie, supra*, 40 Cal.4th at p. 1332.) ■ While the legislative policy set forth in Senate Bill 899 treats Dorsett less favorably than if he had sustained a single injury with the same level of disability, "we interpret the law; we do not write it." (*Barr v. Workers' Comp. Appeals Bd.* (2008) 164 Cal.App.4th 173, 178 [78 Cal.Rptr.3d 732].)

■ Here, the AME stated that Dorsett's two injuries became permanent and stationary at the same time and that his "current level of permanent disability—whatever that level may be—is apportioned 50 percent to the specific injury and 50 percent to the cumulative trauma injury." "The doctor made a determination based on his medical expertise of the approximate percentage of permanent disability caused by [the employee's two injuries]. Section 4663, subdivision (c), requires no more." (*E.L. Yeager Construction v. Workers' Comp. Appeals Bd.* (2006) 145 Cal.App.4th 922, 930 [52 Cal.Rptr.3d

133].) Therefore, based on the testimony of the AME, the successive injuries can be rated separately and Dorsett's joint and several award of 100 percent permanent disability must be annulled. Upon remand, the WCJ must make an apportionment determination by finding what approximate percentage of Dorsett's permanent disability was caused by the direct result of the cumulative trauma injury and what approximate percentage of the permanent disability was caused by other factors, including his prior specific industrial injury. (§ 4663, subd. (c).)

## DISPOSITION

The order denying reconsideration is annulled, and the matter is remanded to the Board with directions to order the WCJ to make an award consistent with this opinion.

Elia, Acting P. J., and Duffy, J.,* concurred.

The petition of respondent James Dorsett for review by the Supreme Court was denied February 1, 2012, S198796.

---

*Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.