Filed 7/16/13; pub. order 8/9/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ACME STEEL et al.,<br><br>　　　Petitioners,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and MICHAEL BORMAN,<br><br>　　　Respondents. | A137915<br><br>WCAB Nos. ADJ1785165, ADJ2923303) |

　　　Acme Steel, insured by Sentry Claims Service and Zurich North America, (Acme), petitions for a writ of review (see Lab. Code, §§ 5950, 5952;[1] Cal. Rules of Court, rule 8.495), contending the Workers' Compensation Appeals Board (WCAB) erred by awarding respondent Michael Borman 100 percent permanent disability without apportionment for prior hearing loss.  We will grant the petition.

## BACKGROUND

　　　Michael Borman sustained continuous trauma injury to his ears (hearing loss), bilateral upper extremities, neck and head during the year prior to his last day at work for Acme as a steelworker on October 16, 2003.  Borman was examined by three different Agreed Medical Examiners (AME), namely, Dr. John Devor (general orthopedics); Dr. Robert Ansel (neurology) and Dr. David Schindler (hearing loss).  In his July 2004 report, AME Dr. Schindler apportioned hearing loss based on both non-industrial,

---

[1]  Further statutory references are to the Labor Code unless otherwise stated.

degenerative causes and prior injury, opining that Borman's 100 percent "binaural neurosensory hearing loss" was 60 percent due to "occupational factors, specifically noise induced hearing loss. Approximately 40 percent of Mr. Borman's hearing loss is the result of non-occupational factors, particularly cochlear degeneration." Dr. Schindler based this opinion on his proposed etiology of the hearing loss, stating that "The high-frequency progressive hearing loss is consistent with acouso-trauma of noise exposure as described both by Dr. Manace and the patient. The low frequency hearing loss seen at the 250 [hertz (Hz)] through 750 Hz position on the pure tone audiometry is not consistent with noise[-]induced hearing loss. This form of hearing loss is suspicious of a degenerative process of the cochlea. The etiology of that degenerative process is unknown but is most consistent [with] a congenital degeneration of the entire organ of Corti." Dr. Schindler's July 2004 report also notes Borman described how an explosion at the factory in December 1994 threw him 10 to 15 feet and knocked him out momentarily. Borman told Dr. Schindler he filed a workers' compensation claim following the explosion and was rated at 22 percent disability due to hearing loss, and his hearing has gradually gotten worse since then.

In a later report prepared in June 2009, Dr. Schindler elaborated on apportionment of hearing loss. Dr. Schindler noted Borman was examined by Dr. David Manace in October 1994. Dr. Manace documented that the explosion experienced by Borman occurred in 1993, found Borman had "a 37.5 percent monaural loss in the right ear and a 37.5 percent monaural hearing loss in the left ear for a 37.5 percent binaural hearing loss at that time," and concluded Borman had a bilateral high-frequency hearing loss consistent with accumulated noise exposure. Dr. Manace recommended Borman should be fitted with hearing aids. Dr. Schindler opined that the "further hearing loss that occurred after Dr. Menace's report of 1994 was the result of both cochlear degeneration in the lower frequencies and persistent noise exposure in the higher frequencies." Furthermore, Dr. Schindler reiterated his conclusion that Borman had "a 100 percent hearing loss . . . apportioned . . . as 60 percent due to noise-induced hearing loss and 40

2

percent due to other factors. The noise-induced hearing loss . . . includes the explosion component that was found by Dr. Menace," adding, "I did not apportion Dr. Menace's portion of the hearing loss."

In July 2012, the Workers' Compensation Administrative Law Judge (WCALJ) issued a "Findings and Award" and "Opinion on Decision" following proceedings held in April 2012 at which Borman was the only witness. The WCALJ found Borman's injury ratable under the post-2004 Permanent Disability Ratings Schedule. The WCALJ also found Borman a straight-forward and credible witness, noting that during testimony he "clearly had difficulty understanding questions and had to face his questioners directly in order to 'lip read' as well as listen. His cochlear implants have improved his hearing but his hearing . . . is quite limited[,] . . . particular[ly] . . . in crowded or noisy environments, and [he] cannot function effectively on the phone." The WCALJ found Borman effectively rebutted any Diminished Future Earnings Capacity (DFEC)[2] and showed 100 percent loss of earning capacity entitling him to permanent and total disability. The WCALJ based the latter finding on expert vocational testimony proffered by Borman showing there was no job in the open labor market that could accommodate Borman's "difficulty with oral communications, limitations with use of the upper extremities, limited mobility, need for daily narcotic medication, rests and serious headaches." Additionally, the WCALJ found that "Labor Code section 4664[3] is not pertinent as prior

---

[2]  In 2004, the Legislature implemented comprehensive revisions to California's workers' compensation system by enacting Senate Bill No. 899 (2003–2004 Reg. Sess.) (Sen. Bill No. 899). In Senate Bill No. 899, the Legislature amended section 4660 to require that a permanent disability award give consideration to an injured employee's *diminished future earning capacity*," defined as "a numeric formula based on empirical data and findings" prepared by the RAND Institute for Civil Justice that "aggregate the average percentage of long-term loss of income resulting from each type of injury for similarly situated employees." (§ 4660, subds. (a), (b)(1) & (2); *City of Sebastopol v. Workers' Comp. Appeals Bd.* (2012) 208 Cal.App.4th 1197, 1207–1208.)

[3]  Labor Code section 4664 states in pertinent part: "(a) The employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment. [¶] (b) If the applicant has received a prior award of permanent disability, it shall be conclusively presumed that the prior permanent disability exists at the time of any subsequent industrial injury. This presumption is a presumption affecting the burden of proof."

to the instant cumulative trauma injury there was no earnings loss due to the prior award of permanent disability for hearing loss," reasoning that "Borman continued to work [after] the prior award for prior hearing loss, [and his] hearing loss progressed to the point where he required implants, which . . . have severe limitations."

In August 2012, Acme sought reconsideration of the award, contending solely that the WCALJ exceeded her powers by failing to apportion injury pursuant to section 4663[4] because there was evidence showing hearing loss was 40 percent non-industrial and 37.5 percent from a prior hearing loss.

In November 2012, the WCALJ issued her report and recommendation on petition for reconsideration. The WCALJ noted Acme "essentially claims that I am bound to follow [AME's] and may not find the schedule rebutted by wage loss vocational testimony." The WCALJ stated she was not bound by the findings of the AME's "when there is convincing vocational testimony regarding loss of earning capacity." In this regard, the WCALJ relied on expert testimony that "the appearance of the cochlear implants themselves act as a bar to employment" due the "prominent [appearance] on both sides of the head," which is "still quite an uncommon sight." The WCALJ found that the " 'new' element of the deterrent appearance of the contacts and wires and shaved head spots associated with the implant, combined with the various medical limitations renders the Applicant unemployable and thus he has a complete loss of earning capacity." In January 2013, the WCAB summarily denied Acme's petition for reconsideration "for the reasons stated by the [WCALJ] in said Opinion and Report, which we adopt and incorporate . . . ."

---

[4] Labor Code section 4663 states in pertinent part: "(a) Apportionment of permanent disability shall be based on causation. [¶] (b) Any physician who prepares a report addressing the issue of permanent disability due to a claimed industrial injury shall in that report address the issue of causation of the permanent disability. [¶] (c) In order for a physician's report to be considered complete on the issue of permanent disability, the report must include an apportionment determination. A physician shall make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries."

DISCUSSION

"When a workers' compensation decision rests on the Board's erroneous interpretation of the law, the reviewing court will annul the decision. [Citation.] The Board's conclusions on questions of law are reviewed de novo." (*Benson v. Workers' Comp. Appeals Bd.* (2009) 170 Cal.App.4th 1535, 1542–1543 (*Benson*).)

Here, we do not take issue with the WCALJ's conclusion that Borman could rebut the rating schedule's DFEC by offering vocational expert testimony showing 100 percent loss of earning capacity. (See *Ogilvie v. Workers' Comp. Appeals Bd.* (2011) 197 Cal.App.4th 1262, 1267, 1274–1275 [remanding for further proceedings to allow applicant opportunity to rebut "permanent disability rating of 28 percent, as adjusted due to her [DFEC], age, occupation, and apportionment for nonindustrial and preexisting disability"].) The WCALJ erred, however, by failing to address the issue of apportionment. As the Supreme Court stated in *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313 (*Brodie*): "Employers must compensate injured workers only for that portion of their permanent disability attributable to a current industrial injury, not for that portion attributable to previous injuries or to nonindustrial factors. 'Apportionment is the process employed by the Board to segregate the residuals of an industrial injury from those attributable to other industrial injuries, or to nonindustrial factors, in order to fairly allocate the legal responsibility.' [Citation.]" (*Id.* at p. 1321.)

Sections 4663 and 4664 (see *ante*, fns. 3, 4), enacted in 2004 as part of Senate Bill No. 899 (see *ante*, fn. 2), changed the former process of apportionment pursuant to which apportionment based on causation was prohibited, where employers were " 'liable for any portion of a disability that would not have occurred but for the current industrial cause' " and employees were granted " 'wide latitude to disprove apportionment based on prior permanent disability awards by demonstrating that they had substantially rehabilitated the injury. [Citation.]' [Citation.]" (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2011) 201 Cal.App.4th 443, 450–451 (*State Comp. Fund*), citing *Brodie, supra,* 40 Cal.4th 1313, 1326–1327.) "The plain language of new sections 4663 and 4664," noted

5

the Supreme Court, "demonstrates they were intended to reverse these features" of the former workers' compensation system. (*Brodie, supra,* at p. 1327.) Under the revised workers' compensation system introduced by Senate Bill No. 899, apportionment was "based on causation" (§ 4663, subd. (a)), and the "the new approach to apportionment is to look at the current disability and parcel out its causative sources—nonindustrial, prior industrial, current industrial—and decide the amount directly caused by the current industrial source. This approach requires thorough consideration of past injuries, not disregard of them." (*Brodie, supra,* at p. 1328.)

In short, the "clear intent" of the Legislature in enacting Senate Bill No. 899 was "to charge employers only with that percentage of permanent disability directly caused by the current industrial injury." (*Brodie, supra,* 40 Cal.4th 1313, 1332; see also *State Comp. Fund, supra,* 201 Cal.App.4th 443, 451.) "Therefore, evaluating physicians, the WCJ, and the Board *must* 'make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries.' [Citations.]" (*State Comp. Fund, supra,* at p. 451, italics added.) Indeed, apportionment is excused only under extremely " 'limited circumstances, . . . when the evaluating physician cannot parcel out, with reasonable medical probability, the approximate percentages to which each distinct industrial injury causally contributed to the employee's overall permanent disability. . . .' [Citations.]" (*Id.* at p. 452.)

Here, the WCAB ignored substantial medical evidence presented by Dr. Schindler, as summarized above, showing that Borman's 100 percent loss of hearing could not be attributed solely to the current cumulative trauma. (See *E.L. Yeager Construction v. Workers' Comp. Appeals Bd.* (2006) 145 Cal.App.4th 922, 928 ["In order to constitute substantial evidence, a medical opinion must be predicated on reasonable medical probability."].) Faced with this unrebutted substantial medical evidence from the AME,

the WCAB should have parceled out the "causative sources—nonindustrial, prior industrial, current industrial—and decide[d] the amount directly caused by the current industrial source." (*Brodie, supra,* 40 Cal.4th 1313, 1328.)

Borman's arguments to the contrary are unpersuasive. In this regard, we reject Borman's contention that Dr. Schindler's reports and opinions do not constitute substantial evidence of apportionment. Borman also asserts his testimony that he received a 22 percent permanent disability award for hearing loss sustained as a result of an explosion in 1994 is unreliable hearsay. However, it is irrelevant to apportionment whether or not Borman in fact received a prior 22 percent permanent disability award for hearing loss. (See *Benson, supra,* 170 Cal.App.4th 1535, 1549–1550, & fn. 14 [apportionment required for prior injury regardless of whether worker received prior award of permanent disability for the injury].)[5] In sum, the WCAB's failure to apportion the hearing loss portion of the current cumulative trauma is contrary to the law, and, as a consequence, the award must be annulled.

## DISPOSITION

The petition for review is granted, the order denying consideration is annulled, and the matter is remanded to the WCAB with directions to order the WCALJ to make an award consistent with this opinion.

---

[5] At oral argument, Borman pressed his contention that since (1) there can be no disability for hearing loss under section 5412 until there is evidence of time lost from work (citing *County of Los Angeles v. Workers' Comp. Appeals Bd.* (*Gregg*) (1982) 47 Cal.Comp.Cases 1215, 1216); (2) there is no evidence he lost time off work for a hearing loss injury related to the 1993 explosion; and (3) under section 5500.5 petitioner is responsible for the combined exposure to noise from his entire work life from 1972 to 2003, thus there is no prior cumulative trauma injury for which to apportion preexisting disability. This contention confuses the fact of an *injury* and a finding of *disability*, ignores the 2004 Legislative mandate that an employer is only liable for "that percentage of permanent disability directly caused by the *current* industrial *injury*" (*Brodie, supra,* 40 Cal.4th 1313, 1332 [italics added]), and, moreover, is foreclosed by the *Benson* court's conclusion that apportionment is required for a prior *injury* regardless of whether the claimant received a prior award of permanent disability for the *injury*, (see *Benson, supra,* 170 Cal.App.4th 1335, 1549–1550, & fn. 14 [also noting the 2004 revisions reflect "the Legislature's intent to require apportionment on an *injury*-by-*injury* basis, and no longer only for 'previous permanent disability' "]).

_____
Dondero, Acting P. J.

We concur:


_____
Banke, J.


_____
Sepulveda, J.*


* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ACME STEEL et al., <br><br>      Petitioners, <br><br> v. <br><br> WORKERS' COMPENSATION APPEALS BOARD and MICHAEL BORMAN, <br><br>      Respondents. | A137915 <br><br> WCAB Nos. ADJ1785165, ADJ2923303) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:

     The opinion in the above-entitled matter filed on July 16, 2013, was not certified for publication in the Official Reports. After the court's review of requests under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated:

                                                          _____

                                                          Dondero, Acting P.J.

Workers' Compensation Appeals Board

Counsel:

Wai & Connor, LLP, and Steven W. Cox for Petitioner.

Pegnim & Ivancich Antioch and Thomas M. Pegnim for Respondent Michael Borman.