Filed 4/26/17

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITY OF JACKSON, | C078706 |
| Petitioner, | (WCAB No. ADJ8701916) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and CHRISTOPHER RICE, | |
| Respondents. | |

ORIGINAL PROCEEDING; petition for writ of review. Annulled and remanded with directions.

Lenahan, Lee, Slater & Pearse and Charles S. Templeton for Petitioner.

Finnegan, Marks, Theofel & Desmond and Ellen Sims Langille for California Chamber of Commerce as Amicus Curiae on behalf of Petitioner.

Mastagni Holstedt, Eric D. Ledger and Edward W. Lester for Respondent Christopher Rice.

No appearance for Respondent Workers' Compensation Appeals Board.

William A. Herreras for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondent Christopher Rice.

1

In this workers' compensation proceeding we granted the writ of review of the employer, City of Jackson (City), after the Workers' Compensation Appeals Board (Board) disregarded the apportionment determination of the qualified medical evaluator (QME) on the ground the determination was not substantial medical evidence and directed the workers' compensation administrative law judge (ALJ) to make an award of unapportioned disability.

The QME concluded that the employee's disability--neck, shoulder, arm, and hand pain--was caused by cervical degenerative disc disease, and that the disease, in turn, was caused in large part by heredity or genetics. The QME thus assigned causation 49 percent to the employee's personal history, which included, but was not limited to, the genetic cause of the degenerative disease. The ALJ agreed with the QME's apportionment, but the Board did not.

The Board concluded the QME could not assign causation to genetics because that is an "impermissible immutable factor[]." The Board also concluded that by relying on the employee's genetic makeup, the QME apportioned the causation of the injury rather than the extent of his disability. Finally, the Board concluded the QME's determination was not substantial medical evidence.

We disagree with each of the Board's conclusions, and shall annul its order and remand with directions to deny reconsideration.

FACTUAL AND PROCEDURAL BACKGROUND

Christopher Rice worked for the City as a police officer. He started employment with City as a reserve officer in August 2004, and became full time in 2005. He sustained injury to his neck arising out of and in the course of his employment during the cumulative period ending April 22, 2009, at which time Rice was 29 years old.

Before undergoing neck surgery, Rice was examined by QME Dr. Sloane Blair in November 2011. Dr. Blair examined Rice and reviewed his medical records. Rice's

2

injury was cumulative, i.e., he had not suffered an exact or isolated injury.[1]  Rice and his treating physician believed his pain was a consequence of repetitive bending and twisting of his head and neck.

An X-ray showed degenerative disc disease.  Dr. Blair diagnosed Rice with cervical radiculopathy and cervical degenerative disc disease.[2]

As is relevant to the issue of apportionment, Dr. Blair found Rice's condition was caused by:  (1) his work activities for the City; (2) his prior work activities; (3) his personal activities, including prior injuries and recreational activities; and (4) his personal history, in which category Blair included "heritability and genetics," Rice's "history of smoking," and "his diagnosis of lateral epicondylitis [(commonly known as tennis elbow)]."  Dr. Blair apportioned each factor equally at 25 percent.

Dr. Blair re-evaluated Rice in May 2013 following his neck surgery.  Her diagnosis was unchanged and the four causes contributing to the diagnosis were unchanged, but the apportionment was changed.  Dr. Blair stated, "Since his evaluation on 11.7.11, there are specific publications that have lent even more support to the causation of genomics/genetics/heritable issues in terms of his injury."  Dr. Blair listed three such studies, and stated that because more recent studies supported "genomics as a significant causative factor in cervical spine disability," her apportionment changed to 17 percent, each to Rice's employment with City, previous employment, and personal activities, and 49 percent to his personal history, "including genetic issues."

---

[1]  "An injury may be either:  (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment."  (Lab. Code, § 3208.1.)

[2]  Cervical radiculopathy is a "[d]isease or abnormality of a spinal nerve root at its origin in the cervical spine."  (1 Schmidt, Attorney's Dict. of Medicine, Illustrated (2010) p. C-175.)

3

In response to questions from Rice's attorney, Dr. Blair prepared a supplemental report, in which she affirmed that she could state "to a reasonable degree of medical probability that genetics has played a role in Mr. Rice's injury," despite the fact that there is no way to test for genetic factors. Citing to the referenced medical studies, Dr. Blair stated that one of them said "heritability was . . . 73 percent in the cervical spine. . . . [S]moking, age, and work are only a small percentage of disc disease and most of it is familial." Another source cited the role of heritability in disc degeneration as 75 percent, and the other stated it was 73 percent. Dr. Blair cited a fourth article that claimed, " '[t]win studies demonstrate that degeneration in adults may be explained up to 75 percent by genes alone.' " The same study found environmental factors to contribute little or not at all. Dr. Blair stated that while these studies supported an apportionment of 75 percent to personal history, she decided to err on the side of the patient in case there was some unknown "inherent weakness" in the study, and decided that 49 percent was the "lowest level that could reasonably be stated." Dr. Blair stated that even without knowing the cause of Rice's father's back problems, the evidence Rice's degenerative disc disease having a predominantly genetic cause was "fairly strong" where there is no clear traumatic injury, as in Rice's case.

The ALJ found that Dr. Blair did not provide "sufficient information to identify the nature of any prior cervical problems and 'how and why' any such problems are related to applicant's current level of permanent disability." Accordingly, the ALJ concluded that Dr. Blair's apportionment 17 percent to prior work activities and 17 percent to prior activities was not based on substantial evidence. This conclusion is not part of this writ proceeding. The ALJ further found City had carried its burden of showing apportionment as to 49 percent attributable to genetic factors, and this is the determination at issue here.

Rice filed a petition for reconsideration before the Board, arguing that the 49 percent apportionment to genetic risk factors was not substantial medical evidence

4

because there was no evidence Rice's family had a history of cervical degenerative disc disease, and there was no genetic test for degenerative disc disease. The Board granted the petition for reconsideration and eventually ordered the matter returned to the trial level for an unapportioned award of permanent disability. The Board reasoned that "finding causation on applicant's 'genetics' opens the door to apportionment of disability to impermissible immutable factors. . . . Without proper apportionment to specific identifiable factors, we cannot rely upon Dr. Blair's determination as substantial medical evidence to justify apportioning 49% of applicant's disability to non-industrial factors."

## DISCUSSION

### I
### Standard of Review

We review the Board's factual findings for substantial evidence, but we review its legal decisions de novo. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1298; *Le Vesque v. Work's Comp. Appeals Bd.* (1970) 1 Cal.3d 627, 637.) This case turns on the Board's legal decisions.

### II
### Apportionment May Be Properly Based on Genetics/Hereditability

The Board opined without explanation that apportioning causation to " 'genetics' opens the door to apportionment of disability to impermissible immutable factors." We perceive no impermissible apportionment here, and the Board's prior apportionment decisions under similar circumstances belies the validity of its statement.

Prior to 2004, when the Legislature enacted Senate Bill No. 899 (2003-2004 Reg. Sess.), apportionment based on causation was prohibited. (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1326 (*Brodie*).) A disability that resulted from both industrial and nonindustrial causes was apportionable only if the nonindustrial portion would have resulted from the normal progression of the nonindustrial disease. (*Ibid*.) This meant employers were liable for the entire disability if the disability arose in part

5

from an interaction between an industrial cause and a nonindustrial cause, but the nonindustrial cause alone would not have given rise to a disability. (*Ibid.*) Thus, an employer was liable for the entire disability if an industrial injury aggravated a previously existing nonindustrial condition. (*Ibid.*)

For example, in *Zemke v. Work's Comp. Appeals Bd.* (1968) 68 Cal.2d 794, 796 (*Zemke*), the worker suffered an injury to his back when he lifted a barrel at work. Three doctors agreed that the worker had a preexisting "arthritic condition" that was asymptomatic before the injury. (*Id.* at p. 797.) The doctors variously described the preexisting condition as osteoarthritic changes and degenerative disc disease. (*Id.* at pp. 797-798.) The Board, following the doctors' opinion on apportionment, found that 50 percent of the worker's disability was attributable to the preexisting condition. (*Id.* at p. 797.) The Supreme Court annulled the Board's ruling, holding that, " 'the employer takes the employee subject to his condition when he enters the employment, and that therefore compensation is not to be denied merely because the workman's physical condition was such as to cause him to suffer a disability from an injury which ordinarily, given a stronger and healthier constitution, would have caused little or no inconvenience.' " (*Id.* at p. 800.) *Zemke* was superseded by the enactment of Senate Bill No. 899 (2003-2004 Reg. Sess.). (*Brodie*, *supra*, 40 Cal.4th at p. 1326.)

Since the enactment of Senate Bill No. 899 (2003-2004 Reg. Sess.), apportionment of permanent disability is based on causation, and the employer is liable only for the percentage of permanent disability directly caused by the industrial injury. (*Brodie*, *supra*, 40 Cal.4th at pp. 1324-1325.) Apportionment may now be based on " 'other factors' " that caused the disability, including "the natural progression of a non-industrial condition or disease, a preexisting disability, or a post-injury disabling event[,] . . . pathology, asymptomatic prior conditions, and retroactive prophylactic work preclusions . . . ." (*Escobedo v. Marshalls* (2005) 70 Cal.Comp.Cases 604, 617-618 (*Escobedo*).) Precluding apportionment based on "impermissible immutable factors"

6

would preclude apportionment based on the very factors that the legislation now permits, i.e., apportionment based on pathology and asymptomatic prior conditions for which the worker has an inherited predisposition.

The Board's ruling indicates that it believes "genetics" is not a proper factor on which to base causation. However, since 2004 it has allowed apportionment based on such a factor, even though it may not have used the term "genetics."

In *Kos v. Workers' Comp. Appeals Bd.* (2008) 73 Cal.Comp.Cases 529, 530 the worker developed back and hip pain while working as an office manager. She was diagnosed with "multilevel degenerative disease," and the medical evaluator found that the underlying degenerative disc disease was not caused by work activities, but that the worker's prolonged sitting at work " 'lit up' " her preexisting disc disease. (*Id.* at p. 531.) The medical evaluator testified that the worker's "pre-existing genetic predisposition for degenerative disc disease would have contributed approximately 75 percent to her overall level of disability." (*Ibid.*) Nevertheless, the ALJ found no basis for apportioning the disability. (*Id.* at p. 532.) The Board granted reconsideration and rescinded the ALJ decision. (*Id.* at p. 532.) The Board stated that in degenerative disease cases, it is incorrect to conclude that the worker's permanent disability is necessarily entirely caused by the industrial injury without apportionment. (*Id.* at p. 533.) Thus, in *Kos*, the Board had no trouble apportioning disability where the degenerative disc disease was caused by a "pre-existing genetic predisposition."

In *Escobedo, supra*, 70 Cal.Comp.Cases at pages 608, 609, the ALJ apportioned 50 percent of the worker's knee injury to non-industrial causation based on the medical evaluator's opinion that the worker suffered from " ' "significant degenerative arthritis." ' " The Board stated: "In this case, the issue is whether an apportionment of permanent disability can be made based on the preexisting arthritis in applicant's knees. Under pre-[Senate Bill No.] 899 [(2003-2004 Reg. Sess.)] apportionment law, there would have been a question of whether this would have constituted an impermissible

7

apportionment to pathology or causative factors.  [Citations.]  Under [Senate Bill No.] 899 [(2003-2004 Reg. Sess.)], however, apportionment now can be based on non-industrial pathology, if it can be demonstrated by substantial medical evidence that the non-industrial pathology has caused permanent disability.  [¶] . . . [¶] . . . Thus, the preexisting disability may arise from any source--congenital, developmental, pathological, or traumatic."  (*Id*. at pp. 617-619.)  We perceive no relevant distinction between allowing apportionment based on a preexisting congenital or pathological condition and allowing apportionment based on a preexisting degenerative condition caused by heredity or genetics.

In *Acme Steel v. Workers' Comp. Appeals Bd*. (2013) 218 Cal.App.4th 1137, 1139, the medical examiner apportioned 40 percent of the worker's hearing loss to " 'congenital degeneration' " of the cochlea.  The ALJ nevertheless refused to apportion the disability, and the Board denied the employer's petition for reconsideration.  (*Id*. at pp. 1140-1141.) The Court of Appeal granted the employer's writ of review and remanded the matter to the Board, holding Labor Code sections 4663 and 4664 required apportionment for the nonindustrial cause due to congenital degeneration where substantial medical evidence showed 100 percent of the hearing loss could not be attributed to the industrial cumulative trauma.  (*Acme Steel*, at pp. 1142-1143.)  Again, we see no relevant distinction between apportionment for a preexisting disease that is congenital and degenerative, and apportionment for a preexisting degenerative disease caused by heredity or genetics.[3]

---

[3]   The California Applicants' Attorneys Association filed an amicus curiae brief arguing apportionment to genetics is unlawful invidious discrimination pursuant to Government Code section 11135, which prohibits government programs or activities from discrimination on the basis of, inter alia, physical disability or genetic information.  We decline to address this argument because it was not raised by petitioner.  " 'Amicus Curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be

8

III
Dr. Blair Properly Apportioned Disability

The Board's opinion stated: "[R]elying upon applicant's genetic makeup leads Dr. Blair to apportion the causation of applicant's injury rather than apportionment of the extent of his disability." The facts of this case do not support the Board's legal conclusion.

Labor Code section 4663, subdivision (a) provides: "Apportionment of permanent disability shall be based on causation." In *Escobedo*, *supra*, 70 Cal.Comp.Cases at page 611, the Board came to the obvious conclusion that causation in this context means causation of the permanent disability. The Board stated that "the percentage to which an applicant's *injury* is causally related to his or her employment is not necessarily the same as the percentage to which an applicant's *permanent disability* is causally related to his or her injury." (*Ibid*.)[4] While this might be true, Dr. Blair's analysis was not mistaken in this case.

"Disability" as used in the workers' compensation context includes two elements: "(1) actual incapacity to perform the tasks usually encountered in one's employment and the wage loss resulting therefrom, and (2) physical impairment of the body that may or may not be incapacitating." (*Allied Compensation Ins. Co. v. Industrial Acci. Com.* (1963) 211 Cal.App.2d 821, 831.) Permanent disability is " ' "the irreversible residual of an injury," ' " and permanent disability payments are intended to compensate for physical loss and loss of earning capacity. (*Brodie, supra*, 40 Cal.4th at p. 1320.) Here, Dr. Blair

considered.' [Citations.] Otherwise, amicus curiae, rather than the parties themselves, would control the issues litigated." (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (2001) 90 Cal.App.4th 1151, 1161, fn. 6.)

[4] In a later case, the Board recognized that just because causation of the injury is not necessarily the same as causation of the disability does not mean the two *cannot* be the same. (*Kos*, *supra*, 73 Cal.Comp.Cases at p. 533.)

identified Rice's disability as neck pain and left arm, hand, and shoulder pain, which prevented him from sitting for more than two hours per day, lifting more than 15 pounds, and any vibratory activities such as driving long distances. All of these activities were included in Rice's job description.

Rice's *injury*, on the other hand, was a cumulative injury, which Dr. Blair stated Rice acknowledged was not an exact or isolated injury, but which he believed was a consequence of repetitive motion primarily resulting from his employment. Thus, the injury was repetitive motion. Dr. Blair did not conclude, as the Board apparently determined, that the repetitive motion (the injury) was caused by genetics. Rather, Dr. Blair properly concluded that Rice's *disability*, i.e., his debilitating neck, arm, hand, and shoulder pain preventing him from performing his job activities, was caused only partially (17 percent) by his work activities, and was caused primarily (49 percent) by his genetics. Contrary to the Board's opinion, Dr. Blair did not apportion causation to injury rather than disability.

IV

Dr. Blair's Opinion Is Based on Substantial Medical Evidence

The Board found that Dr. Blair's report did not suffice as "substantial medical evidence to justify apportioning 49% of [Rice's] disability to non-industrial factors." We disagree.

Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion. (*Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd*. (1983) 34 Cal.3d 159, 164.) In *Escobedo, supra*, 70 Cal.Comp.Cases at page 620, the Board opined that in order for a medical opinion to constitute substantial evidence, it must be predicated on reasonable medical probability. It must also set forth the reasoning behind the physician's opinion. (*Id*. at p. 621.) In the context of an apportionment determination, the opinion must "disclose familiarity with the concepts of apportionment, describe in detail the exact nature of the apportionable disability, and set

10

forth the basis for the opinion, so that the Board can determine whether the physician is properly apportioning under correct legal principles." (*Ibid*.) A medical opinion must be framed in terms of reasonable medical probability, must not be speculative, must be based on pertinent facts and on adequate examination and history, and must set forth the reasoning in support of its conclusions. (*Ibid*.) A medical report is not substantial medical evidence "if it is based on facts no longer germane, on inadequate medical histories or examinations, on incorrect legal theories, or on surmise, speculation, conjecture, or guess." (*Id*. at p. 620.)

Dr. Blair's diagnosis was that Rice's disability was the result of cervical radiculopathy and cervical degenerative disc disease. The apportionment determination that is relevant here is that part of the causation that Dr. Blair listed as "personal history." Dr. Blair initially apportioned 25 percent of the cause of disability to personal history. Her explanation was that studies indicate that heredity and genetics are significant causes of degenerative diseases of the spine, such as that exhibited by Rice. Dr. Blair also included in the personal history category Rice's history of smoking and previous diagnosis of lateral epicondylitis.

In a supplemental report, Dr. Blair stated that there is evidence in the literature that repetitive activity "has a link to degenerative disease." She stated that some of his work activities could be associated "with work-related repetitive causation," thus work-related activities could not be eliminated as a potential cause.

In a subsequent, postsurgical evaluation, Dr. Blair opined that the causes of Rice's disability remained the same, but the apportionment had changed. It changed because Dr. Blair became aware of three medical publications, which she named, that indicated the role of heredity in causing degenerative disc disease was greater than Dr. Blair previously realized. Because of these publications, Dr. Blair apportioned 49 percent of Rice's disability "to his personal history, including genetic issues, and 17 percent each to his

11

employment with the City of Jackson, his previous employment history, and his personal injuries."

Dr. Blair attempted to explain her change of apportionment in a subsequent supplement report. She was asked how she could state to a reasonable degree of medical probability that genetics played a role in Rice's injury. She responded that she could do so because medical studies showed that the role of "heritability" in degenerative disc disease had been found to be between 73 and 75 percent. One of the studies, which was conducted using twins, found: " 'In comparison, suspected environmental factors were found to contribute little (e[.]g. physical loading, cigarette smoking, age[,] 2-7 percent variation) or not at all (e[.]g. whole body vibration associated with exposure to motor vehicle use).['] . . . '[t]here is some variation with respect to the level of the spine, but the effects are small compared with the ability to predict degenerative changes based on family data.' "

Dr. Blair stated that, given the medical literature, ". . . I think I can say to a reasonable degree of medical probability that genetics has played a role in Mr. Rice's injury. In fact, I think that your counterparts on the other side of this issue could come back to me and essentially say that I have not ascribed a significant enough percentage to that amount. However, I always try and err on the side of the patient. . . . In my effort to err on the side of the patient, I decided against .63, .73, 73, 74, 75 percent because of perhaps some inherent weaknesses in the study, although I really do not know of any, and the fact that there are multiple sources does not really indicate any, but nevertheless, . . . I decided on 49 percent as the lowest level that could reasonably be stated." Dr. Blair went on to say that even without researching Rice's family history, "the evidence is fairly strong that there is predominantly genetic causation, unless there is a clear traumatic injury, which, in Mr. Rice's case, there was not."

Rice incorrectly asserts that "Dr. Blair concluded that genetics plays a role in approximately 63-75 percent of degenerative disc disease cases." Dr. Blair's findings do

not indicate that approximately 75 percent of degenerative disc disease *cases* are caused wholly by genetics, the other approximately 25 percent of *cases* being caused wholly by other factors. Instead, she indicated that degenerative disc disease in adults " 'may be explained up to 75 percent by genes alone.' " In other words, *every* case of degenerative disc disease in adults is caused in part by genetics or heredity, and the other part by other factors. This is also the reason that Rice's claim that Dr. Blair's opinion lacked evidentiary support is wrong. Rice argues Dr. Blair cannot have known his degenerative disc disease was caused by genetics because she never researched his familial medical history. It was unnecessary for Dr. Blair to conduct such an analysis because her research indicated that genetics or heredity was a majority factor in *all* cases of degenerative disc disease. This explains Dr. Blair's response to Rice's attorney's request that Dr. Blair consider a hypothetical in which one patient has cervical degenerative disease caused by genetics and the other one has the disease caused by environmental factors. She responded that such a hypothetical situation would never be seen in practice and that the assumption was not reasonable.

Dr. Blair's reports meet all of the requirements of *Escobedo*. Dr. Blair expressly stated that confidence in her opinion was predicated on reasonable degree of medical probability. Dr. Blair gave the reasoning behind her opinion--the published medical studies--and even named the studies and the pages relied upon. Her opinion disclosed familiarity with the concept of apportionment. Labor Code section 4663 states that apportionment is based on causation, and that "[a] physician shall make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors . . . ." (Lab. Code, § 4663, subd. (c).)

Dr. Blair's reports reflect an understanding that apportionment is based on the cause of the disability, and the necessity of determining what percentage was caused by

13

Rice's employment. She explained that the causation of his disability stemmed from work activities with the City, prior work activities, prior personal injuries, and personal history. Included in the causes listed as personal history were "heritability and genetics" as supported by medical studies, Rice's brief history of smoking, and his prior diagnosis of lateral epicondylitis.

Dr. Blair's reports reflect, without speculation, that Rice's disability is the result of cervical radiculopathy and degenerative disc disease. Her diagnosis was based on medical history, physical examination, and diagnostic studies that included X-rays and MRI's (magnetic resonance imaging scans). She determined that 49 percent of his condition was caused by heredity, genomics, and other personal history factors. Her conclusion was based on medical studies that were cited in her report, in addition to an adequate medical history and examination. Dr. Blair's combined reports are more than sufficient to meet the standard of substantial medical evidence.

DISPOSITION

The Workers' Compensation Appeals Board's opinion and decision after reconsideration that was filed January 30, 2015, and that granted reconsideration, is annulled and the matter is remanded to the Board to deny reconsideration. Petitioner is awarded costs.

_/s/_____
Blease, Acting P. J.

We concur:

_/s/_____
Hoch, J.

_/s/_____
Renner, J.

14