Filed 12/21/23

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DERYLL TEAORIO OLAY,<br><br>        Defendant and Appellant. | A166288<br><br>(Napa County Super. Ct.<br>  Nos. 22CR000828, 19CR000600) |

Defendant Deryll Teaorio Olay appeals following the trial court's denial of his motion to strike a prior conviction under Penal Code section 1385.[1] Olay argues that the court erred in denying his motion pursuant to *People v. Superior Court (Romero)* 13 Cal.4th 497 (*Romero*) and in concluding that the term "enhancement" in section 1385, subdivision (c) does not include prior strike allegations. Olay further contends that his case must be remanded based on newly added section 17.2, which requires that trial courts consider alternatives to incarceration. We find no error and affirm. In the portion of our opinion certified for publication, we conclude that the term "enhancement" in section 1385, subdivision (c) does not include prior strikes.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts A and C in the Discussion.

[1] All further statutory references are to the Penal Code unless otherwise specified.

In the unpublished portion of our opinion, we conclude that Olay's other arguments lack merit as well.

## I.  BACKGROUND

In April 2022, plaintiff and respondent the People of the State of California (People) filed an information charging Olay with one count of grand theft (§ 487, subd. (a)) and one count of vandalism (§ 594, subd. (b)(2)). The information included an allegation that Olay had suffered a prior strike conviction for attempted robbery in 2018.[2]  In June 2022, Olay pled no contest to grand theft and admitted the prior strike allegation.  Olay further admitted he violated his probation from another case in 2019.

Prior to sentencing, Olay filed a motion to dismiss his prior strike pursuant to *Romero* and Senate Bill No. 81 (2021–2022 Reg. Sess.) (SB 81). SB 81 amended section 1385 by requiring that a trial court "dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by an initiative statute."  (§ 1385, subd. (c)(1).)  Olay also asked the court to grant probation and allow him to participate in drug court.  The People opposed the motion.

This case involved Olay's theft of a catalytic converter.  In April 2022, Mark A. called the police and reported that a male wearing a face covering had knocked on his door.  Mark A. was alarmed by this and did not answer the door.  From his security camera, he saw the male (later identified as Olay) drive up and park across the street.  Olay went between Mark A.'s two parked cars for a few minutes before getting back into his car and driving away.  Olay was holding a catalytic converter.  The police detained Olay the

---

[2] The record contains little detail about this attempted robbery conviction presumably because the attempt occurred in another county.

2

next day and found a handheld saw, bolt cutters, and a hydraulic vehicle jack in the car Olay was driving.

Olay's 2019 case involved vehicle theft and extortion. In February 2019, 76-year old Richard W. reported that his car was stolen and that he had received multiple calls from an unknown male (later identified as Olay) who was asking him for money in exchange for returning his car.[3] Olay identified himself as Deryll and told Richard W. that his friend had found Richard W.'s car and could tow it to Richard W. for $800.00. With the police listening in, Richard W. agreed and asked that his car be towed to a designated location. The police arrested Olay when he went to that location to meet Richard W.

The trial court denied Olay's motion. The court first concluded that section 1385, subdivision (c) did not apply to prior strikes because the Three Strikes law was not an enhancement but a "voluntary sentencing scheme." The court then denied the *Romero* motion on the grounds that Olay's prior strike was very recent and that his offenses were not "low level cases." Olay's current offense involved the theft of a catalytic converter and his prior offense involved the attempted extortion of a vulnerable victim. The court also noted that Olay had violated probation more than once in his attempted robbery case. The court denied probation in the grand theft case and sentenced Olay to a low term of 16 months, doubled to 32 months due to his prior strike. In the extortion case, the court revoked and terminated probation and sentenced Olay to a midterm of two years on the attempted extortion count (§ 564) and

---

[3] Richard W. also reported that on the previous day, he was working on his car when unknown males in a truck pulled up next to him and asked if he needed help. Richard W. responded he did not. He later noticed that the key from his vehicle was missing from the door and believed that these males had stolen it.

a midterm of two years on the vehicle theft count (Veh. Code, § 10851, subd. (a)).  These two sentences were ordered to run concurrent to each other.

Olay timely appealed.

## II.  DISCUSSION

A.  The Trial Court Properly Denied the *Romero* Motion.

Olay contends the trial court abused its discretion by denying his *Romero* motion.  We disagree.

"California's 'Three Strikes law' applies to a criminal defendant who is currently charged and convicted of a felony and who has previously been convicted of one or more serious or violent felonies."  (*In re Coley* (2012) 55 Cal.4th 524, 528.)  The trial court may, either on its own motion or on application of the parties, dismiss a prior felony conviction allegation under the Three Strikes law "in furtherance of justice."  (§ 1385, subd. (a); *Romero, supra,* 13 Cal.4th at pp. 529–530.)

"A court's discretion to strike prior felony conviction allegations in furtherance of justice is limited."  (*Romero, supra,* 13 Cal.4th at p. 530.)  The court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Because the Three Strikes law "carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so . . . the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper."  (*People*

4

*v. Carmony* (2004) 33 Cal.4th 367, 378.)  Given this presumption, "a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Ibid*.)  Indeed, "[b]ecause the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid*.)

Olay contends that the trial court abused its discretion by refusing to dismiss his prior strike because his criminal history did not involve actual violence and because his crimes were related to his drug addiction.  We are unpersuaded.  That the offenses may not have involved actual violence does not constitute "extraordinary circumstances" to support an abuse of discretion.  As Olay points out, his prior strike conviction for attempted robbery is a serious felony.  (§ 1192.7, subd. (c)(19).)  And as the trial court noted, Olay committed the serious felony "very recent[ly]" and violated probation more than once in that case.  The court further noted that Olay's extortion offense was also recent and involved a vulnerable victim.  Under these facts, we find no abuse of discretion.

Likewise, Olay fails to show that his self-proclaimed drug addiction constitutes "extraordinary circumstances" that place him outside the spirit of the Three Strikes law.  As a mitigating factor, Olay argued that his criminal history stemmed from his drug addiction and requested that the trial court grant probation and place him in drug court.  But we have no reason to believe the court did not consider this factor in deciding Olay's

5

*Romero* motion. "On a silent record in a post-*Romero* case, the presumption that a trial court ordinarily is presumed to have correctly applied the law should be applicable." (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 434.) Indeed, the court could have found this factor inapplicable because Olay provided no treatment records or diagnoses from a medical professional to support his claim of drug addiction. That the court did not explicitly reference drug addiction when it denied the *Romero* motion does not mean it did not consider it or that it abused its discretion.[4]

B. SB 81 Does Not Apply to Prior Strike Allegations

Effective January 1, 2022, SB 81 added section 1385, subdivision (c)(1) to require that a trial court "dismiss an *enhancement* if it is in the furtherance of justice to do so, except if dismissal of that *enhancement* is prohibited by an initiative statute." (Italics added.) "In exercising its discretion [under subdivision (c)] . . . the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the *enhancement*, unless the court finds that dismissal of the *enhancement* would endanger public safety." (§ 1385, subd. (c)(2), italics added.) One such mitigating circumstance is that: "The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the

---

[4] We find *People v. Avila* (2020) 57 Cal.App.5th 1134, 1141, a case Olay cites, distinguishable. There, the court of appeal found an abuse of discretion because the trial court explicitly stated that it did not consider certain mitigating factors that were relevant, such as the remoteness of the prior strikes or the defendant's youth when he committed the prior strikes. The trial court also mistakenly concluded that the defendant never sought to address his drug addiction. (*Id.* at p. 1144.) This was not the case here.

*enhancement* or *enhancements* applied in the current case." (*Id.*, subd. (c)(2)(G), italics added.)[5] Olay argues that the trial court erred in refusing to apply subdivision (c) because it erroneously concluded that the term "enhancement" does not include a prior strike allegation. We disagree.

"Whether the amendments to section 1385 apply to prior strike convictions is a question of statutory interpretation which we review de novo." (*People v. Burke* (2023) 89 Cal.App.5th 237, 242 (*Burke*).) To answer this question, "we are guided by familiar canons of statutory construction. '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Coronado* (1995) 12 Cal.4th 145, 151.)

---

[5] The original text of section 1385, subdivision (c)(2)(G) only included the term "juvenile adjudication." The term "criminal convictions" was subsequently added by Assembly Bill No. 200 (2021–2022 Reg. Sess.) that same year. The legislative history describes this addition as a "technical, non-substantive" one. (Sen. Com. on Budget and Fiscal Rev., Rep. on Assem. Bill 200 (2021–2022 Reg. Sess.) as amended June 26, 2022, p. 2.)

"When we interpret statutes, we usually begin by considering the ordinary and usual meaning of the law's terms, viewing them in their context within the statute." (*In re Friend* (2021) 11 Cal.5th 720, 730.) But when "a term has developed a particular meaning in the law, we generally presume the legislative body used the term in that sense rather than relying on ordinary usage. 'It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts.' " (*Ibid*.) Indeed, "when a word used in a statute has a well-established *legal* meaning, it will be given that meaning in construing the statute." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19, italics in original; see also Civ. Code, § 13.)

Based on this canon of statutory construction, the court of appeal in *Burke*, *supra*, 89 Cal.App.5th at page 244, recently concluded that "section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." According to the court, "[t]he term 'enhancement' has a well-established technical meaning in California law" and means " 'an additional term of imprisonment added to the base term.' " (*Id*. at p. 243; see also Cal. Rules of Court, rule 4.405, subd. (5).) The court then observed "that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme . . . ." (*Burke*, at p. 243, citing *Romero*, *supra*, 13 Cal.4th at p. 527 ["The Three Strikes law . . . articulates an alternative sentencing scheme for the current offense rather than an enhancement"].) Presuming that the Legislature "was aware of[] and acquiesced in" this legal definition and distinction (*Burke*, at p. 243) and concluding that the pertinent

statutory language "is clear and unambiguous" (*ibid.*), *Burke* held that section 1385, subdivision (c) did not apply to prior strike allegations (*Burke*, at p. 244).

We would agree with the reasoning of *Burke* but for the language of section 1385, subdivision (c)(2)(G)—which *Burke* did not consider.[6] That subdivision states that a "criminal conviction[] [or] *juvenile adjudication*[] that trigger[s] the enhancement or enhancements applied in the current case" is a mitigating circumstance to which a trial court must "afford great weight" in deciding whether to dismiss an "enhancement." (§ 1385, subds. (c)(2) & (c)(2)(G), italics added.)

According to Olay, the term "enhancement" in section 1385, subdivision (c) should not be given its established legal meaning because there is *no* enhancement that is "trigger[ed]" by a "juvenile adjudication[]."[7] Like Olay, we were unable to find any such enhancement, and the People do not argue that one exists. This is presumably because juvenile adjudications cannot be considered " 'convictions' " for purposes of an enhancement. (*People v. West*

---

[6] Presumably, the court of appeal in *Burke* did not do so because the appellant failed to raise it.

[7] Olay also argues that adopting the legal meaning of enhancement would render meaningless the language in section 1385, subdivision (c)(1) that makes the subdivision inapplicable if dismissal of the enhancement is "prohibited by any initiative statute." But even if Olay is correct that no existing initiative measure prohibits the dismissal of an enhancement that falls under the legal definition, statutory language that is otherwise unnecessary may "clarify . . . a point notwithstanding the rule against surplusage." (*Farmers Ins. Exchange v. Superior Court* (2006) 137 Cal.App.4th 842, 858.) As explained in the legislative history, the Legislature included that language in section 1385, subdivision (c)(1) to ensure that SB 81 would never run afoul of any initiative measures. (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81 (2021–2022 Reg. Sess.) as amended Apr. 27, 2021, p. 6.)

(1984) 154 Cal.App.3d 100, 108.)  Juvenile adjudications may, however, be a strike under the Three Strikes law.  (§§ 667, subd. (d)(3); 1170.12, subd. (b)(3).)  Thus, Olay argues, to give the phrase "juvenile adjudications[] that trigger the enhancement or enhancements applied in the current case" in section 1385, subdivision (c)(2)(G) any purpose or meaning, the term "enhancement" should include prior strike allegations.  (See *People v. Valencia* (2017) 3 Cal.5th 347, 357 ["we generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided' "].)  This, in turn, would mean that the pertinent language of section 1385, subdivision (c) is ambiguous.  (See *In re Jesusa V.* (2004) 32 Cal.4th 588, 622 [where dueling interpretations of a statutory term would render other language in the statute meaningless, the statutory language is ambiguous]; *Kennedy Wholesale, Inc. v State Bd. of Equalization* (1991) 53 Cal.3d 245, 249 [a "latent" ambiguity may exist based on the effect that proposed interpretations of statutory language would have on other provisions or statutes].)

Nonetheless, we still agree with *Burke*'s ultimate conclusion—that section 1385, subdivision (c) does not apply to the Three Strikes law.  (*Burke, supra,* 89 Cal.App.5th at p. 244.)  In particular, we are skeptical the Legislature would have expressed an intent to reject the well-established legal meaning of "enhancement" in such a roundabout manner by obliquely referencing "juvenile adjudications" as one of the relevant mitigating circumstances.  Indeed, " '[t]he principle of Occam's razor—that the simplest of competing theories should be preferred over more complex and subtle ones—is as valid juridically as it is scientifically.' "  (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1328, fn. 10 (*Brodie*).)  If the

Legislature had wanted section 1385, subdivision (c) to apply to prior strikes as well as to enhancements as legally defined, it would have said so.

The legislative history confirms the Legislature had no such intent. (See *People v. Coronado*, *supra*, 12 Cal.4th at p. 151 [courts may "resort" to legislative history when statutory language is ambiguous].)  The June 2021 bill analysis of SB 81 by the Assembly Committee on Public Safety distinguished an "enhancement" from "an alternative penalty scheme" like the Three Strikes law.  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81, *supra*, as amended Apr. 27, 2021, at pp. 5–6, citing Cal. Rules of Court, rule 4.405, subd. (3), *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 898–899, and *People v. Jefferson* (1999) 21 Cal.4th 86, 101.)  After making that distinction, the bill analysis states, in no uncertain terms, that "[t]he presumption created by this bill applies to enhancements [] *but does not encompass alternative penalty schemes*." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81, *supra*, as amended Apr. 27, 2021, at p. 6, italics added.)  A more unambiguous statement of the Legislature's intent to adopt the legal meaning of enhancement for section 1385, subdivision (c) can hardly be imagined.  (See *Wendz v. California Dept. of Education* (2023) 93 Cal.App.5th 607, 630 ["Only '[a] clear statement of intent allows a court to reasonably indulge the inference that the individual members of the Legislature may have given at least a little thought to the statement before voting on the bill' "].)

The Legislature's intent to adopt the legal meaning of enhancement is further confirmed by the legislative history after the June 2021 bill analysis. That subsequent history makes no reference whatsoever to the Three

11

Strikes law or any other alternative sentencing scheme.[8] (See Assem. Com. on Appropriations, Analysis of Sen. Bill No. 81 (2021–2022 Reg. Sess.) as amended July 1, 2021; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 81, *supra*, as amended Aug. 30, 2021; Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business, *supra*, as amended Aug. 30, 2021.) Instead, the only enhancement identified in the legislative history after the June 2021 bill analysis falls squarely within the legal definition of enhancement. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 81, *supra*, as amended Aug. 30, 2021, at p. 2 [referencing "a gun enhancement imposed under Penal Code Section 12022.53"].)

Despite this, Olay, citing to a footnote in *Burke,* argues that the legislative history of SB 81 is ambiguous as to the meaning of the term enhancement. (See *Burke*, *supra,* 89 Cal.App.5th at 243, fn. 3 ["We recognize much of the legislative history is inconsistent . . . and suggests that the term enhancement includes the Three Strikes law"].) However, a closer look at that legislative history reveals that there is no ambiguity and that the Legislature did not intend for that term to include prior strikes.

SB 81 "codifie[d] a recommendation [by the] Committee on the Revision of the Penal Code [(CRPC)] to improve fairness in sentencing" and help

---

[8] This also suggests that the "juvenile adjudications" language—which was added *after* the June 2021 bill analysis—was not intended to make section 1385, subdivision (c) applicable to the Three Strikes law. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 81 (2021–2022 Reg. Sess.) as amended Aug. 30, 2021, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business (2021–2022 Reg. Sess.) as amended Aug. 30, 2021, p. 3.) If, in the future, a juvenile adjudication is deemed an appropriate basis for an enhancement, no further amendment to section 1385, subdivision (c)(2)(G) will be necessary.

ensure that penalties more closely reflect the circumstances of the crime. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 81 (2021–2022 Reg. Sess.) Mar. 16, 2021, p. 3.)  As *Burke* correctly noted, the CRPC's report "repeatedly refers to 'Strikes' as enhancements rather than using the technical legal meaning and does not separate 'Strikes' from inclusion in its recommendation." (*Burke*, *supra,* 89 Cal.App.5th at p. 243, fn. 3.)  If the legislative history indicated that the Legislature, in enacting SB 81, intended to adopt the CRPC's recommendation in its entirety, then we would agree that the history is inconsistent as argued by Olay.  But the June 2021 bill analysis makes it clear that SB 81 *only* codified the CRPC's "recommendation [on the application of] sentence *enhancements*" (Assem. Com. On Public Safety, Analysis of Sen. Bill No. 81, *supra*, as amended Apr. 27, 2021, at p. 3), as defined by rule 4.405, subdivision (3) of the California Rules of Court (Assem. Com. On Public Safety, Analysis of Sen. Bill No. 81, *supra*, as amended Apr. 27, 2021, at pp. 2 & 5)—which does not encompass alternative sentencing schemes like the Three Strikes law (*id.* at p. 4). Thus, the broader understanding of the term enhancement used by the CRPC is irrelevant here.  And to the extent the legislative history may have been unclear about the meaning of the term enhancement before June 2021, the June 2021 bill analysis cleared up that confusion.

Indeed, aside from the June 2021 bill analysis, the legislative history of SB 81 does not *directly* address the meaning of the term enhancement as used in section 1385, subdivision (c). If, as Olay contends, the Legislature intended to depart from existing law by adopting a more expansive understanding of that term, presumably, the legislative history would have expressed this intent far less obliquely.  (Cf. *Brodie, supra,* 40 Cal.4th at p. 1329 [an omission in the description of changes made by a bill to existing

13

law in the legislative history indicates that the omission was intentional].)
More notably, the legislative history would not have expressed the exact
opposite:  an intent to adopt the narrower, legal meaning of the term
enhancement for purposes of section 1385, subdivision (c).  (See Assem. Com.
on Public Safety, Analysis of Sen. Bill No. 81, *supra*, as amended April 27,
2021, at p. 4.)

Finally, our interpretation is consistent with the purpose behind SB 81:
to improve "fairness in sentencing while retaining a judge's authority to
apply an enhancement to protect public safety."  (Sen. Rules Com., Off. of
Sen. Floor Analyses, 3d reading of Sen. Bill No. 81, *supra,* as amended Aug.
30, 2021, at p. 5; Assem. Com. on Appropriations, Analysis of Sen. Bill No.
81, *supra*, as amended July 1, 2021, at p. 2.)  Accomplishing this purpose
does not require interpreting an enhancement to include a prior strike.  And
the omission of prior strike allegations from the purview of section 1385,
subdivision (c) does not support a contrary conclusion.  Accordingly, we hold
that section 1385, subdivision (c) does not apply to the Three Strikes law.

C.  <u>Remand for Resentencing is Not Required Under Section 17.2</u>

Effective January 1, 2023, Assembly Bill No. 2167 (2022–2023 Reg.
Sess.) added section 17.2 to require that trial courts "consider alternatives to
incarceration and use [the] least restrictive means available."  (§ 17.2.)
Alternatives to incarceration include, but are not limited to, "collaborative
justice court programs, diversion, restorative justice, and probation."  (*Id.,*
subd. (b).)  The court maintains "the discretion to determine the appropriate
sentence according to relevant statutes and the sentencing rules of the
Judicial Council."  (*Id.*, subd. (c).)

Based on the retroactive application of section 17.2 to nonfinal criminal
cases like his (see *In re Estrada* (1965) 63 Cal.2d 740, 744), Olay argues that

this matter should be remanded so that the trial court can consider alternatives to incarceration. The People agree that section 17.2 applies retroactively but contend remand is not required because the record clearly indicates that the court would have imposed the same sentence notwithstanding section 17.2. We agree. Remand under a newly enacted law that gives trial courts additional sentencing discretion is unnecessary when "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

The record here shows that the trial court would not have sentenced Olay any differently had section 17.2 been in effect at the time of sentencing. In both his moving papers and at the hearing, Olay requested that the court exercise its discretion to grant probation and allow him to participate in drug court. And we have no reason to believe the court did not consider Olay's purported drug addiction in declining to do so because it was referenced by Olay in his moving papers and at the hearing. Nor do we have any reason to believe that the court failed to consider whether Olay should be placed on probation so he could participate in drug court. Indeed, despite Olay's request for probation, the court never expressed any interest in granting probation. Instead, the court highlighted Olay's multiple probation violations in his prior strike case and revoked and terminated Olay's probation in the extortion case after he admitted to a probation violation. Finally, the court did not abuse its discretion in denying Olay's *Romero* motion—which rendered him ineligible for probation (§ 1170.12, subd. (a)(2))—reinforcing that the court would not have adopted a less "restrictive" "alternative[] to incarceration" under section 17.2.

## III.  DISPOSITION

The judgment is affirmed.

CHOU, J.

We concur.

JACKSON, P. J.
SIMONS, J.

*People v. Olay* / A166288

Trial Court:        Superior Court of Napa County

Trial Judge:        Hon. Mark Boessenecker

Counsel:

Keith Fox, By Appointment of the First District Court of Appeal under the Frist District Appellate Project, for Defendant and Appellant.

Rob Bonta, Attorney General of California; Lance E. Winters, Chief Assistant Attorney General; Susan Sullivan Pithey, Senior Assistant Attorney General; Scott A. Taryle, Supervising Deputy Attorney General; Nicholas J. Webster, Deputy Attorney General; for Plaintiff and Respondent.